ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| LUIS E. RIVERA VEGA<br><br>Parte Apelada<br><br><br>v.<br><br><br><br>AUTO SUPPLY DEL NORTE, INC.<br><br>Parte Apelante | KLAN202400050 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm.: MZ2022CV00992<br><br>Sala: 307<br><br>Sobre:<br><br>Despido Injustificado Ley 80 |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 8 de febrero de 2024.

Compareció ante este Tribunal la parte apelante, Auto Supply del Norte Inc. (en adelante, "Auto" o "Apelante"), mediante recurso de apelación presentado el 16 de enero de 2024. Nos solicitó la revocación de la *Sentencia* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (en adelante, el "TPI"), el 3 de enero de 2024. Mediante dicho dictamen, el TPI declaró "Ha Lugar" la "**Querella**" instada por el Sr. Luis E. Rivera Vega (en adelante, el "señor Rivera Vega" o "Apelado") sobre despido injustificado.

Por los fundamentos que expondremos a continuación, se *confirma* la *Sentencia* apelada.

**I.**

El caso de autos se originó el 6 de julio de 2022, con la presentación de una **"Querella"** al amparo de la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, conocida como la "Ley de Procedimiento Sumario de Reclamaciones Laborales", 32 LPRA secs. 3118 *et seq.*, y de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, "Ley Sobre Despidos

Número Identificador
SEN2024_____

Injustificados", 29 LPRA secs. 185a *et seq.* (en adelante, "Ley Núm. 80"), por parte del señor Rivera Vega en contra del Apelante. En su escrito, alegó que: (1) trabajó para Auto desde octubre de 2016 hasta diciembre de 2021 como gerente de ventas; (2) en diciembre de 2021, estando vigentes las correspondientes Órdenes Ejecutivas emitidas por el Gobierno de Puerto Rico, surgió un brote de COVID-19 en su área de trabajo; (3) su patrono obtuvo órdenes médicas hechas por una optómetra a nombre de cada uno de los empleados; (4) los empleados recibieron la orden de Auto de realizarse la prueba de COVID-19; (5) el Apelado se realizó la prueba en un laboratorio donde le cobraron $65.00 por efectuar la misma; (6) como era uso y costumbre, y con la autorización del Apelante, puso el recibo del pago de la prueba dentro de la caja registradora y reembolsó dicho gasto del efectivo disponible; (7) como consecuencia de ello, fue despedido de su empleo; y (8) que el despido fue uno totalmente injustificado y arbitrario conforme a la Ley Núm. 80, *supra*.

Oportunamente, Auto radicó su "**Contestación a Querella**" el 29 de julio de 2022. Argumentó que el señor Rivera Vega no ocupaba la posición de gerente de ventas, sino que era dependiente en el "counter" de ventas de piezas. Manifestó que éste se apropió ilegalmente de dinero de la caja registradora del negocio. Añadió que la conducta del Apelado estaba enmarcada dentro del criterio de gravedad reconocido por nuestro ordenamiento jurídico para justificar un despido a la primera falta. Sin embargo, invocó como defensa afirmativa un presunto patrón de faltas previas.

Más adelante, el 23 de mayo de 2023, se celebró la *Conferencia con Antelación a Juicio* y el 26 de octubre de 2023, se llevó a cabo el juicio. El foro primario tuvo la oportunidad de escuchar el testimonio de las siguientes personas: (1) el señor Rivera Vega; (2) la Sra. Vilma Cruz (en adelante, la "señora Cruz"); (3) el Sr. Ángelo Bracero (en adelante, el "señor Bracero"); (4) la Sra. Zoraida Torres; (5) el Sr. Ángel Vázquez.

Luego de varios trámites procesales, el TPI emitió una *Sentencia* mediante la cual declaró "Ha Lugar" la "**Querella**" radicada por el Apelado

y ordenó al Apelante a satisfacer la suma de $12,675.77, por concepto de mesada como indemnización por el despido injustificado. Asimismo, se le impuso a Auto el pago por la cantidad de $2,535.14, correspondiente al 20% de la mesada concedida por concepto de honorarios de abogado.

Inconforme con lo anteriormente resuelto, el Apelante acudió a este Tribunal mediante el recurso de epígrafe, en el que señaló los siguientes errores:

> **PRIMER SEÑALAMIENTO DE ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE EL DESPIDO DEL QUERELLANTE FUE UNO INJUSTIFICADO.**
>
> **SEGUNDO SEÑALAMIENTO DE ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL EFECTUAR UN C[Ó]MPUTO DE MESADA ERR[Ó]NEO, MEDIANTE EL CUAL LE CONCEDIÓ AL QUERELLANTE UNA CUANTÍA MAYOR A LA QUE DISPONE LA LEY 80.**
>
> **TERCER SEÑALAMIENTO DE ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONCEDER HONORARIOS DE ABOGADO EN EXCESO DE LO ESTABLECIDO EN LA LEY 80 Y LA JURISPRUDENCIA APLICABLE**.

El 1 de febrero de 2024, el señor Rivera Vega presentó "**Alegato en Oposición a Recurso de Apelación**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

En nuestro sistema jurídico el contrato de servicios que concretiza una relación obrero-patronal se constituye como el medio principal de sustento para los empleados y sus dependientes. Díaz v. Wyndham Hotel Corp., 155 DPR 364, 374 (2001). Debido a ello, existe un interés estatal apremiante para reglamentar las relaciones obrero-patronales, de forma tal que las mismas se enmarquen en una política pública enfocada en salvaguardar los derechos de los trabajadores. Íd. De conformidad con lo anterior, se incorporó en la Ley Núm. 80, *supra*, el requisito de "justa causa" como medida limitativa en toda causa de acción por despido. Por tanto, nuestra jurisprudencia ha establecido que este estatuto siempre debe ser

interpretado de la forma más liberal y favorable al empleado. Jusino *et als.* v. Walgreens, 155 DPR 560, 571 (2001).

La fecha de contratación del empleado es esencial para computar la indemnización por despido injustificado. Así pues, todo empleado de comercio, industria o cualquier otro negocio o sitio de empleo, donde trabaja mediante remuneración de clase alguna, contratado sin tiempo determinado antes de la vigencia de la Ley Núm. 4-2017, conocida como la "Ley de Transformación y Flexibilidad Laboral", 29 LPRA secs. 121 *et seq.*, y que fuere despedido sin justa causa, tendrá derecho a recibir de su patrono, el sueldo correspondiente a dos (2) meses por concepto de indemnización, si el despido ocurre dentro de los primeros cinco (5) años de servicios. Si el despido ocurre luego de los cinco (5) años hasta los quince (15) años de servicio, el empleado tiene derecho al sueldo correspondiente a tres (3) meses de empleo. Guías para la Interpretación de la Legislación Laboral de Puerto Rico del Departamento del Trabajo y Recursos Humanos, 1era Ed., mayo 2019, pág. 141. El empleado también tiene derecho a una indemnización progresiva adicional equivalente a una semana por cada año de servicio cuando el despido ocurre dentro de los primeros cinco (5) años de servicio y a dos (2) semanas por cada año de servicio, si el despido ocurre luego de los cinco (5) años hasta los quince años de servicio. Íd., págs. 141-142.

Para ser acreedor del remedio y de los beneficios que provee esta ley, el empleado separado de su cargo debe cumplir con los siguientes requisitos: (1) la existencia de una relación obrero-patronal remunerada; (2) que el empleado haya sido contratado por tiempo indeterminado; y (3) que el empleado haya sido despedido sin que medie justa causa. C. Zeno Santiago y otros, Tratado de Derecho del Trabajo, San Juan, Puerto Rico, Publicaciones JTS, 2003, T. I, pág. 98.

Nótese que nuestro ordenamiento jurídico cobija el poder de dirección empresarial, al reconocerles a los patronos el derecho de despedir a sus empleados, por cualquier razón no discriminatoria. Díaz v. Wyndham Hotel Corp., *supra*, pág. 377. Sobre el particular, cabe destacar

que las circunstancias que contempla el estatuto en cuanto a lo que se entiende como causa que justifique el despido no son taxativas y que constituye justa causa para el despido aquella que está vinculada a la ordenada marcha y normal funcionamiento de una empresa. Srio. del Trabajo v. G.P. Inds., Inc., 153 DPR 223, 243 (2001).

Es preciso señalar que el ordenamiento jurídico en Puerto Rico no impide los despidos; solamente interpone el requisito de justa causa para ello. Para rebatir la presunción de despido injustificado, el patrono puede presentar como defensa afirmativa prueba que establezca, mediante la preponderancia de la evidencia, que hubo justa causa para el despido. En términos generales, el estatuto contempla dos tipos de causales para que el despido de un empleado se considere hecho con justa causa: (1) actuaciones imputables al obrero y de las cuales se entiende que ha provocado su despido; y (2) situaciones no imputables al obrero pero que son de tal naturaleza que su despido resulta prácticamente inevitable.

El Artículo 2 de la Ley Núm. 80, *supra*, establece –en su parte pertinente– que será justa causa para el despido de un empleado lo siguiente:

(a) **Que el empleado incurra en un patrón de conducta impropia o desordenada**.
(b) **Que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente**. Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono.
(c) **Violación reiterada por el empleado de las reglas y reglamentos** razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado. 29 LPRA sec. 185b (énfasis suplido).

El Tribunal Supremo ha resuelto que la "[l]ey no pretende ni puede […] ser un código de conducta conteniendo una lista de faltas claramente definidas y la sanción que corresponde a cada una y en cada instancia, si ha de ser reprimenda, suspensión o despido". Srio. del Trabajo v. I.T.T., 108 DPR 536, 542 (1979). El concepto de "justa causa" "es dinámico,

puesto que se nutre de múltiples y fluidas situaciones imposibles de prever". Srio. del Trabajo v. G.P. Inds., Inc., *supra*, pág. 243.

El referido Artículo 2 de la Ley Núm. 80, *supra*, no pretende, ni puede ser considerado la variedad de circunstancias y normas de los múltiples establecimientos de trabajo, o ser un código de conducta que contenga una lista de faltas claramente definidas y la sanción que corresponda a cada una y en cada instancia. Srio. del Trabajo v. I.T.T., *supra*, pág. 542. Para propósitos de aplicar las diferentes leyes protectoras del trabajador, el Tribunal Supremo ha utilizado, a manera de referencia, y sin ser exhaustivo y en forma orientadora, las enumeradas en el Artículo 2 de la Ley Núm. 80, *supra*, como causas justificadas para el despido. Rivera Águila v. K-Mart de P.R., 123 DPR 599, 610 (1989); Báez García v. Cooper Labs., Inc., 120 DPR 145, 151-152 (1987).

Es norma firmemente establecida en nuestra jurisdicción que no es justa causa para despedir a un empleado aquélla fundada en el libre arbitrio o capricho del patrono, sino que las motivaciones del despido estén relacionadas con el buen funcionamiento de la empresa concernida. León Torres v. Rivera Lebrón, 204 DPR 20, 37 (2020). Ahora bien, la Ley Núm. 80, *supra*, no prohíbe el despido de un empleado, sino que "[d]icho curso de acción como tal se reconoce como una facultad o derecho que ostenta todo patrono en una sociedad moderna que se desarrolla y desenvuelve alrededor y a base de las fuerzas del libre mercado y del derecho de propiedad o de dirección empresarial". Díaz v. Wyndham Hotel Corp., *supra*, pág. 377.

De ahí que exista una presunción de que el despido del empleado fue injustificado, lo que provoca que el patrono tenga que rebatirla mediante preponderancia de la evidencia. Belk v. Martínez, 146 DPR 215, 230-231 (1998). Si existe justa causa, el empleado puede ser despedido. Santiago v. Kodak Caribbean, Ltd., 129 DPR 763, 775 (1992). Por el contrario, si el patrono no logra establecer la justa causa para el despido, el tribunal deberá concluir que éste fue injustificado "proveyéndose[le] al afectado un remedio exclusivo, la mesada". Díaz v. Wyndham Hotel Corp., *supra*, pág.

378. Es por ello que la norma general de que en toda reclamación civil el querellante está en la obligación de probar por preponderancia de la prueba sus alegaciones, tiene una excepción en los casos en que se reclama indemnización por despido injustificado. Íd., págs. 378-379. "Ahora bien, esa presunción se estableció para facilitar al empleado probar su caso, **más no relevarlo de la necesidad de presentar evidencia alguna para probar sus alegaciones**." Segarra Rivera v. International Shipping Agency, 208 DPR 964, 987 (2022) (énfasis en el original).

Respecto a los honorarios de abogado, para evitar que se reduzca el valor de la indemnización, el pago de los honorarios no recae sobre el empleado. Hernández Maldonado v. Taco Maker, 181 DPR 281, 295 (2011). Así, la Ley Núm. 80, *supra,* dispone que el patrono debe depositar en la secretaría del tribunal una cantidad para honorarios de abogado que no sea menor al quince por ciento (15%) del total de la compensación a la cual tendría derecho el abogado o cien dólares ($100.00), la que fuera mayor. 29 LPRA sec.185k.

Por último, y de particular importancia a los hechos del presente caso, nuestro ordenamiento jurídico no favorece el despido como medida ante una primera ofensa o incumplimiento. SLG Torres-Matundan v. Centro Patología, 193 DPR 920, 931 (2015). Esto es, como norma general, un acto aislado o conducta impropia no justifica el despido de un empleado. Íd. pág. 931. Sin embargo, esta norma no es absoluta. Así pues, nuestro más alto foro judicial ha expresado que la Ley Núm. 80, *supra,* no excluye de la sanción o despido en primera ofensa, aquella "cuya intensidad de agravio en protección de la buena marcha de la empresa y la seguridad de las personas que allí laboran". Íd. Por tal razón, aunque la ley no favorece el despido como castigo a la primera ofensa, esto podría ser visto como válido si la acción u omisión pone en riesgo la seguridad, el orden o la eficacia que constituyen el funcionamiento del negocio. Rivera v. Pan Pepin, 161 DPR 681, 690 (2004). Dicho de otro modo, el patrono tiene el peso de demostrar que:

> [l]a falta o acto aislado que dé lugar [a]l despido del empleado en primera ofensa ha de ser de tal seriedad o naturaleza que

revele una actitud o un detalle de su carácter, tan lesivo a la paz y al buen orden de la empresa, que constituiría una imprudencia esperar [a que se repita, para entonces proceder con el despido]. Feliciano Martes v. Sheraton, 182 DPR 368, 383 (2011) (corchetes en el original).

**B.**

Es norma conocida en nuestro ordenamiento jurídico que, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia. Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co., 209 DPR 759, 779 (2022). Al respecto, la Regla 42.2 de las Reglas de Procedimiento Civil dispone que "[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos". 32 LPRA Ap. V, R. 42.2.

Es decir, un tribunal apelativo no tiene facultad de sustituir por sus propias apreciaciones las determinaciones del foro de instancia. Serrano v. Auxilio Mutuo, 171 DPR 717, 741 (2007). La razón jurídica detrás de esta normativa se fundamenta en la apreciación que hace el adjudicador de los hechos de la prueba testifical, porque al ser una tarea llena de elementos subjetivos, es él quien está en mejor posición para aquilatarla. Sucn. Rosado v. Acevedo Marrero, 196 DPR 884, 917 (2016). El Tribunal de Primera Instancia es el foro que tiene la oportunidad de escuchar el testimonio y apreciar el comportamiento de los testigos. Dávila Nieves v. Meléndez Marín, 187 DPR 750, 771 (2013). Basándose en ello, adjudica la credibilidad que le merecen los testimonios. Así, la declaración directa de un sólo testigo, de ser creída por el juzgador de hechos, es prueba suficiente de cualquier hecho. SLG Rivera Carrasquillo v. AAA, 177 DPR 345, 357 (2009).

A tenor con lo anterior, se le concede respeto a la adjudicación de credibilidad realizada por el juzgador primario de los hechos, dado que el foro apelativo cuenta solamente con "récords mudos e inexpresivos".

Trinidad v. Chade, *supra*, pág. 291. No obstante, la norma de deferencia judicial tiene límites y no supone una inmunidad absoluta frente a la función de los tribunales revisores. El Tribunal Supremo aclaró en Dávila Nieves v. Meléndez Marín, *supra*, por primera vez, qué constituye que un juez adjudique con pasión, prejuicio o parcialidad, o que su determinación sea un error manifiesto. Allí se concluyó que un juzgador incurre en pasión, prejuicio o parcialidad si actúa "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". Íd., pág. 782.

Por otro lado, se consideran claramente erróneas las conclusiones del foro revisado si de un análisis de la totalidad de la evidencia, el foro apelativo queda convencido de que "se cometió un error, [...] [porque] las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". Íd., pág. 772. En otras palabras, incurre en un error manifiesto cuando "la apreciación de esa prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble". Pueblo v. Toro Martínez, 200 DPR 834, 859 (2018).

Por lo tanto, la facultad de los tribunales apelativos para sustituir el criterio de los tribunales de instancia se reduce a aquellas circunstancias en las que, a la luz de la prueba admitida, "no exista base suficiente que apoye su determinación". Gómez Márquez *et al.* v. El Oriental, 203 DPR 783, 794 (2020). Como es conocido, las diferencias de criterio jurídico no cumplen con el referido estándar de revisión. Íd.

En lo referente a las apelaciones dirigidas a cuestionar la apreciación de la prueba efectuada por el foro primario, la Regla 19 del Reglamento de este Tribunal, en lo pertinente, establece lo siguiente:

> (A) Cuando la parte apelante haya señalado algún error relacionado con la suficiencia de la prueba testifical o con la apreciación errónea de ésta por parte del tribunal apelado, someterá una transcripción, una exposición estipulada o una exposición narrativa de la prueba.
>
> (B) La parte apelante deberá acreditar, dentro del término de diez días siguientes a la presentación de la apelación, que el

método de reproducción de la prueba oral que utilizará es el que propicia la más rápida dilucidación del caso, pudiendo el tribunal determinar el método que alcance esos propósitos. 4 LPRA Ap. XXII-B, R. 19.

Relativo a lo anterior, la Regla 76 de dicho cuerpo reglamentario establece que la parte que cuestiona la apreciación de la prueba oral notificará al Tribunal de Apelaciones, no más tarde de diez (10) días desde que se presentó el escrito de apelación, que se propone transcribir la prueba oral, con expresión de las razones por las que considera que la transcripción es indispensable y propicia mayor celeridad en el proceso. 32 LPRA Ap. XXII-B, R 76. Autorizada la transcripción, el proponente podrá solicitar al tribunal de instancia la regrabación de los procedimientos. Íd.

**III.**

En el presente caso, el Apelante nos solicita que revoquemos la *Sentencia* del TPI mediante la cual declaró "Ha Lugar" la "**Querella**" instada por el Apelado.

Como primer señalamiento de error, Auto indicó que el foro apelado erró al determinar que el despido del señor Rivera Vega fue uno injustificado. No le asiste la razón. Nos explicamos.

No existe duda alguna de que, en nuestra jurisdicción, las partes que recurren ante este Tribunal tienen la ineludible responsabilidad de cumplir rigurosamente con las pautas reglamentarias aplicables que regulan el proceso de perfeccionamiento de los recursos que se presentan ante nuestra consideración. Hernández Maldonado v. Taco Maker, *supra*, pág. 290. Por ello, tanto la Regla 19 como la Regla 76 de nuestra Reglamento establecen que la parte apelante está en la obligación de presentar una transcripción de la prueba, una exposición estipulada de la misma o una exposición narrativa de la evidencia oral presentada ante el foro de instancia cuando esgrime planteamientos de error cuestionando la apreciación errónea de la evidencia. *Véanse*, 32 LPRA Ap. XXII-B, RR. 19 y 76.

Surge del expediente del caso que el Apelado trabajó en Auto desde el 4 de noviembre de 2016 hasta el 22 de diciembre de 2021, como vendedor de piezas. Debido a un brote de COVID-19, el 21 de diciembre

de 2021, el Apelante proporcionó referidos médicos a sus empleados para que se hicieran la prueba. Así las cosas, el señor Rivera Vega procedió a realizarse la prueba al día siguiente, la cual tuvo un costo de $65.00. Luego de recibir los resultados, el Apelado regresó a su área de trabajo, colocó el recibo del pago de la prueba de COVID-19 en la caja registradora y tomó $65.00 como reembolso del gasto incurrido. Por estos hechos, el señor Rivera Vega fue despedido. **Es menester destacar que, a base de la prueba creída por el foro apelado, quedó claramente establecido que las facturas o gastos incurridos por la compañía eran pagados con el dinero que se encontraba en las cajas registradoras y, una vez pagado el gasto, se colocaba el recibo o factura. <u>Igualmente, concluyó que tales actuaciones no conllevaban una autorización de los gerentes o supervisores, ya que era uso y costumbre pagar los gastos de la empresa de esa manera</u>**.

Tomando lo anterior como punto de partida, es menester destacar que el Apelante no presentó una transcripción de la prueba oral o una exposición narrativa de la evidencia que nos permitiera evaluar si el TPI sopesó y aquilató correctamente la prueba que se le presentó durante el juicio. Simplemente, se limitó a alegar que el foro primario erró al concluir que el despido fue injustificado porque el Apelado no actuó con buena fe y honestidad a los legítimos intereses de su ex patrono al sustraer $65.00 de la caja registradora para reembolsar el gasto incurrido en hacerse la prueba del COVID-19. A esos efectos, es la contención de Auto que dicha actuación no estuvo autorizada y, por tanto, el despido estuvo dentro de los linderos de lo permitido en nuestro ordenamiento jurídico.

Como hemos adelantado, según la Ley Núm. 80, *supra*, un patrono debe demostrar la existencia de una causa justificada para proceder con el despido de un empleado. Un despido se considera justificado cuando el empleado incurre en un patrón de conducta impropia o desordenada, se desempeña de manera deficiente o reiteradamente infringe las reglas y reglamentos de la empresa. 29 LPRA sec.185b. De ahí que, no se favorece el despido como medida ante una primera falta. No obstante, el despido

por una primera falta procede cuando la gravedad y potencial de agravio de la sanción ponen en peligro la seguridad, el orden o la eficiencia del funcionamiento de la empresa. Rivera v. Pan Pepin, *supra,* pág. 668.

Tras un análisis minucioso del expediente ante nuestra consideración y de los autos electrónicos del Sistema Unificado de Manejo y Administración de Casos (SUMAC), somos de la opinión de que en el presente caso hubo un despido injustificado, pues el señor Rivera Vega no cometió ninguna ofensa. Esto es, el Apelado no incurrió en ninguno de los actos prohibidos establecidos por Auto en el Reglamento y Manual de Procedimientos del Empleado de la compañía. Además, según concluyó el TPI, era uso y costumbre de la empresa que los empleados realizaran los pagos de gastos utilizando el dinero de la caja registradora y colocando el recibo de la factura en su lugar. Así que, el Apelado actúo dentro de una práctica habitual de la empresa que no constituía una violación a las normas de conducta adoptadas por quien era su patrono.

Este es un hecho incontrovertido que no podemos cuestionar ante la ausencia de una transcripción de la prueba o de una exposición narrativa que nos permita adjudicar si dicha conclusión está sustentada por la prueba presentada. Por tanto, en ausencia de ello, este Tribunal está obligado a abstenerse de revisar esa conclusión y la apreciación que le dio el foro primario en su ejercicio de aquilatar la prueba que tuvo ante su consideración. Ello, debido a que, huérfano el expediente apelativo de una transcripción tendente a establecer que el TPI actuó con pasión, prejuicio, parcialidad o error manifiesto, no estamos en condiciones de variar el dictamen apelado. La ausencia de la prueba oral no permite que el Tribunal de Apelaciones tenga los elementos para descartar la apreciación razonada y fundamentada del foro de instancia. Hernández Maldonado v. Taco Maker, *supra*, pág. 289. En otras palabras, estamos ante un panorama en el que contamos con simples alegaciones que no derrotan la presunción de corrección que cobija las determinaciones de hechos y conclusiones basadas en la prueba oral, ni la adjudicación de credibilidad que efectuó el foro primario. Por lo tanto, huérfano el expediente apelativo

de evidencia específica tendente a establecer que el TPI actuó con pasión, prejuicio, parcialidad o error manifiesto, no estamos en condiciones de variar el dictamen apelado.

Aún si hiciéramos abstracción de lo anterior, el expediente revela que la conducta del Apelado representaría su primera infracción y no se demostró que la misma atentó contra la seguridad, el orden y eficiencia del negocio. Así lo especificó el foro primario en la *Sentencia* apelada. Además, si a ello se le une el hecho de que el Reglamento y Manual de Procedimientos del Empleado de Auto establece dos tipos de categorías de violaciones, a saber: violaciones de Tipo I y II. Cuando se comete una primera violación de Tipo I, corresponde hacer una advertencia oral acompañada de un memorando que detalle lo ocurrido. Ante una primera violación de Tipo II, el empleado debe ser suspendido una o dos semanas de empleo sin sueldo, a discreción del personal a cargo de supervisión. Del expediente de nuestro caso, no se desprende que el patrono haya tomado estas medidas preventivas antes de despedir al señor Rivera Vega. Tampoco se desprende ni directa ni indirectamente que la actuación por la cual el Apelado fue despedido estuviera proscrita por las normas del trabajo o de conducta de Auto o que la misma constituyó una falta que pusiera la seguridad ,el orden o la eficiencia del funcionamiento de la empresa en peligro. Por tanto, no vemos que exista un escenario en el que podamos intervenir con la determinación del TPI, cuando concluyó que el despido en este caso fue injustificado.

Como segundo señalamiento de error, Auto planteó que el TPI erró al efectuar el cómputo de mesada, mediante el cual le concedió al señor Rivera Vega una cuantía mayor a la que dispone la Ley Núm. 80, *supra.* Tampoco le asiste la razón.

Primeramente, debemos especificar que el Apelante no nos puso en posición de acoger sus planteamientos, en cuanto al cálculo de la mesada efectuado por el TPI. Simplemente, expuso cuál era la cantidad correspondiente que, a su juicio, le correspondía al señor Rivera Vega sin especificar cómo llego a dicha cantidad y cuáles datos utilizó para ello.

Conforme al estado de derecho antes expuesto, los empleados que han sido contratados antes de la implementación de la Ley Núm. 4-2017, *supra*, y que, a la vez, han sido despedidos sin justa causa, tienen derecho a recibir el sueldo correspondiente a dos (2) meses por concepto de indemnización, si el despido ocurre dentro de los primeros (5) años de servicio. En cambio, si el despido ocurre luego de los cinco (5) años, tienen derecho a recibir el sueldo correspondiente a tres (3) meses de empleo. Guías para la Interpretación de la Legislación Laboral de Puerto Rico del Departamento del Trabajo y Recursos Humanos, *supra*, pág. 141*.* Adicional a la mesada, tienen derecho a una indemnización progresiva. Cuando el servicio ocurre dentro de los primeros cinco (5) años, tienen derecho a cobrar una (1) semana por cada año de servicio y cuando ocurre luego de los cinco (5) años, pueden recibir el salario de dos (2) semanas por cada año de servicio.

Examinemos, pues, la prueba presentada y evaluada por el foro primario. Conforme el expediente de SUMAC, las partes estipularon el formulario W-2 del Apelado correspondiente al año contributivo 2021. De dicha pieza evidenciaria se desprende que el salario anual del señor Rivera Vega era $28,658.34. Dicha cantidad dividida entre los doce (12) meses del año, nos lleva a que el salario mensual del Apelado era $2,388.19, el cual, multiplicado por los tres (3) meses que le corresponden por haber laborado para Auto más de cinco (5) años suma a $7,164.57. A esa cuantía habría que añadirle el pago de dos (2) semanas por cada año trabajado por el Apelado, pues éste prestó servicios por más de cinco (5) años para Auto. Así pues, si el salario anual lo dividimos entre las 52 semanas del año, resulta que el señor Rivera Vega devengaba un salario semanal de $551.12, lo que multiplicado por las diez (10) semanas de la compensación progresiva que dispone la Ley Núm. 4-2017 equivale a $5,511.20. Si sumamos los $7,164.57 más los $5,511.20, la mesada que le corresponde al Apelado son los mismos $12,675.77 que concedió el TPI en la *Sentencia* apelada.

A base de todo lo anterior, concluimos que el foro *a quo* no se equivocó en el cálculo de la mesada que Auto viene obligado a pagarle al Apelado. Nótese que el Apelante nunca nos puso en posición de concluir que el TPI erró en efectuar dicho cómputo y simplemente se limitó a exponer la suma que entendía que era la procedente, sin abonar datos o metodología en su cálculo.

Como último señalamiento de error, el Apelante arguye que el TPI erró al conceder honorarios de abogado en exceso de lo establecido en la Ley Núm. 80. *supra* y la jurisprudencia aplicable. No nos convence su postura.

La Ley Núm. 80, *supra*, le exige al patrono el depósito en la secretaría del tribunal una cantidad para honorarios de abogados que no sea menor del quince (15%) del total de la mesada adjudicada. 29 LPRA sec. 185k. Así pues, es claro que se establece una cantidad mínima de honorarios de abogados, mas no especifica un límite máximo. Dicha disposición lo que establece es meramente un parámetro al que está limitado el juzgador. Es decir, la cantidad nunca será menor del porciento dispuesto o de $100.00. Así lo expresó taxativamente el Tribunal Supremo cuando expresó que "[a]tendiendo a la más corriente y usual significación de estas palabras, concluimos que la ley es clara y libre de ambigüedad al disponer de una cantidad mínima en concepto de honorarios de abogado". Hernández Maldonado v. Taco Maker, *supra*, pág. 297. Por tanto, el foro de instancia puede otorgar una suma mayor a la dispuesta en la Ley Núm. 80, *supra*. Íd. "Favorecer una interpretación contraria equivaldría a ignorar el propósito reparador de la Ley Núm. 80, *supra*." Íd.

El foro primario le concedió al Apelado el 20% de la mesada por concepto de honorarios de abogado. Nuestra evaluación está limitada a determinar si dicha cuantía fue establecida dentro de los linderos de la razonabilidad. Para ello, la parte que sostiene que la misma fue irrazonable, tiene el peso de establecer las razones por las cuales entiende que el TPI fue arbitrario e irrazonable en su determinación. Al examinar el recurso de Auto, notamos que este último lo único que hizo fue limitarse a exponer la

doctrina sin un análisis de los factores que deben guiar a los tribunales a establecer los honorarios de abogado en este caso y los motivos por los cuales dicha cuantía es irrazonable. En ausencia de elementos que nos permitan intervenir con la adjudicación del porciento concedido por el juzgador de los hechos a favor del señor Rivera Vega en concepto de honorarios de abogado, procede no intervenir con el criterio del foro adjudicador. No erró el TPI en su determinación.

**IV.**

Por los fundamentos que anteceden, los cuales se hacen formar parte integral del presente dictamen, *se confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones